## COMMONWEALTH *vs.* EDWARD BISHOP.

Middlesex. February 3, 1993. - August 16, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Rape. Evidence,* Grand jury proceedings, Privileged communication, Medical record, Communication between patient and psychotherapist, School record, Impeachment of credibility, Fresh complaint. *Practice, Criminal,* In camera inspection, Discovery, Bill of particulars. *Privileged Communication.*

There was no merit to a defendant's contention that indictments charging him with sexual offenses involving two teen-aged boys should be dismissed on the ground that the victims' testimony was presented to the grand jury on videotape. [173-174]

Discussion of the standards that the judge in a criminal case is to apply in identifying the circumstances in which disclosure of an alleged victim's privileged records is required in order to provide the defendant a fair trial, as guaranteed by art. 12 of the Massachusetts Declaration of Rights. [175-179]

Description of the procedures that the judge in a criminal case is to follow when the defendant files a motion for production of confidential records pertaining to an alleged victim. [179-183]

Where the record on appeal in a criminal case did not reveal the basis for the judge's decision, after an in camera examination, not to release to the prosecution and the defense certain privileged psychological records of the victims, the judge on remand was to reexamine the records in camera and rule on their relevance to any issue in the case; counsel, in their capacity as officers of the court, were to be allowed access to such material as the judge found to be relevant; and the defendant was to be permitted to move for a new trial. [183-184]

On remand of a rape case, the judge was to rule as to the privileged character of certain undisclosed clinical records of the victims, and was to release the records to the prosecution and the defense if he found them not privileged; if the judge found the records to be privileged, the defendant was to be allowed to submit the theory or theories under which particular records have likely relevance to an issue in the case; and, after in camera review by the judge, counsel, in their capacity as officers of the court, were to be afforded access to any portions of the

records found by the judge to be relevant; the defendant then was to be permitted to move for a new trial. [184-185]

On appeal of his convictions of sexual offenses involving two teen-aged boys, a defendant made no showing that he had been denied access to any relevant information in the victims' school records. [185-186]

At a rape trial, the judge correctly refused to permit the defendant to cross-examine the victims concerning previous false allegations of sexual misconduct against other persons, in the absence of a factual basis for concluding that the victims, or one of them, had made the allegations and that the allegations were false. [186]

There was no merit to a criminal defendant's claim that a bill of particulars furnished to him lacked specificity. [186-187]

At the trial of indictments for sexual offenses, the teen-aged victims' statements to their mother were properly admitted in evidence under the fresh complaint doctrine. [187-188]

At a criminal trial, neither the prosecutor's closing argument [188], nor the representation provided by defense counsel [188], presented any ground for reversal of the defendant's convictions.


INDICTMENTS found and returned in the Superior Court Department on May 2, 1990.

Pretrial motions were heard by *Paul A. Chernoff*, J., and the cases were tried before *John P. Forte*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James L. Rogal* for the defendant.

*Sabita Singh*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The victims, whom we shall call Brian and Stephen (not their true names), are brothers. In the summer of 1987, Brian was fourteen years old and Stephen was thirteen years old. At the time both Brian and Stephen were Boy Scouts. The defendant was the scoutmaster of their troop, which he had organized. The troop was comprised of scouts who were mentally retarded, physically disabled, and emotionally disturbed, though the record does not indicate that either Brian or Stephen was mentally retarded, physically disabled or emotionally disturbed. During summer camp in

1987, the defendant praised Brian in front of the other scouts who then elected Brian senior patrol leader. Once Brian was elected senior patrol leader, the defendant worked closely and maintained frequent contact with him.

Brian testified that he respected the defendant and that he thought that the defendant was "the greatest guy in the world." Brian's admiration was the product, at least in part, of the defendant's recounting of his personal adventures which allegedly included experience as a narcotics agent, a Vietnam veteran, and an agent with the Central Intelligence Agency. The defendant also told Brian that he could predict the future because he had ESP (extra-sensory perception).

It is undisputed that in October, 1987, the defendant asked Brian to accompany him on a trip to Connecticut. The stated purpose of the trip was to pick up furniture and transport it back to the Boston area. The defendant and Brian travelled in the defendant's truck.

At trial, Brian testified that the defendant took him to the defendant's home in Acton on the way to Connecticut. There the defendant showed Brian a pornographic movie. After the movie, they departed. On arrival in Connecticut, Brian testified that the defendant drove to a church located in a "bad part of town." The defendant allegedly pointed out individuals entering into drug transactions. Brian testified that the scene made him nervous.

After the tour, the defendant drove to his wife's parents' home, which was located near the church. After entering the house, Brian testified that the defendant, who apparently sensed Brian's fear, told him that he could help him with his powers of ESP. The defendant told Brian that he cannot always get "a real good picture" of the future using his powers of ESP. In order to get a clearer picture of the future, the defendant said, he needed to touch something other people touch, such as Brian's hands, and something that nobody else could touch, such as Brian's penis. The defendant attempted to grab Brian's penis. Brian pushed him away. Apparently relying on his powers of ESP, the defendant told Brian that bad things could happen if he let Brian out of the house.

Finally, Brian acquiesced. The defendant held Brian's penis. The defendant then told Brian that it would be even better if Brian could "come." ·The defendant placed Brian's penis in his mouth. Brian became unnerved and urinated in the defendant's mouth. The defendant got upset and went to bed.

The following day, Brian helped the defendant load the furniture onto the truck and then the two drove back to Brian's house. The defendant allegedly told Brian not to tell his parents because it would get the defendant in a lot of trouble. Brian testified that similar incidents occurred approximately one hundred times over the next year. The incidents occurred in the defendant's house, Brian's house, the defendant's truck, and at the defendant's place of employment. The last incident took place in January, 1989.

In the fall of 1988, Brian learned that the defendant wanted to take his younger brother, Stephen, who had also been elected senior patrol leader, to Connecticut. Although Brian never told Stephen what the defendant had been doing to him, Brian told Stephen that the defendant was a "fag" and told his mother that he did not think that Stephen should go to Connecticut.

The defendant and Stephen nonetheless departed for Connecticut. Stephen testified that on the way the defendant reached over and tried to grab his crotch. On arrival at the home of his wife's parents, the defendant played a pornographic movie for Stephen. After the movie, the defendant told Stephen that he wanted to show him what some of the things that were going on in the pornographic movie would feel like. The defendant then placed Stephen's penis in his mouth and performed fellatio. During the return trip, the defendant told Stephen that the incident was their secret and that his parents would not like him if they found out. Over the next few months numerous similar incidents occurred between the defendant and Stephen in the defendant's home, in his automobile, and at the defendant's place of employment. The last incident between the defendant and Stephen occurred in October, 1988. In March, 1989, Brian told his

mother of his incidents with the defendant. In July, 1989, she learned of the incidents between Stephen and the defendant.

The defendant testified to a markedly different relationship with Brian and Stephen from that which the boys described. The defendant maintained that his relationship with Brian and Stephen was one of a scoutmaster and scout. The defendant denied allegations of sexual impropriety with the boys. The defendant testified that he did travel to Connecticut with the boys, but denied charges of sexual misconduct. The defendant further testified that he knew the alleged victims' parents socially and visited their home on average once or twice a week during the period April, 1987 to July, 1989, and that the boys had visited his home six or seven times for the purpose of observing his menagerie and furthering other scouting-related interests. It was the defendant's testimony that during these visits, his wife was almost always at home and that seventy-five per cent of the scouts in the troop visited his home.

In May, 1990, a Middlesex County grand jury returned four indictments charging the defendant with having unlawful sexual intercourse or unnatural sexual intercourse and abuse of two children under the age of sixteen. In July, 1990, the defendant was tried before a jury in Superior Court. The jury found the defendant guilty on three indictments. The defendant, asserting various grounds, appeals. We transferred the case to this court on our own motion. For the reasons set forth below, we affirm the convictions.

1. *Grand jury proceedings.* Prior to trial, the defendant filed a motion to dismiss the indictments because the victims' testimony was videotaped and replayed to the grand jury. The defendant argues that the victims' failure to testify in person before the grand jury impermissibly tainted the grand jury proceedings.[1]

The defendant's argument is without merit. It is axiomatic that an indictment may be based entirely on hearsay. See Mass. R. Crim. P. 4 (c), 378 Mass. 849 (1979). The video-

---

[1] The victims testified at trial.

taped testimony presented to the grand jury is hearsay testimony. It is not enough for the defendant to assert that live testimony was available for presentation to the grand jury. See *Commonwealth v. St. Pierre*, 377 Mass. 650, 655 (1979), citing *Commonwealth v. Robinson*, 373 Mass. 591, 592 (1977). "We have, however . . . stressed our position — and do so again — that sound policy dictates a preference for the use of direct testimony before grand juries." *Commonwealth v. St. Pierre, supra* at 655-656. The defendant would have us elevate sound policy to a rule of law — a route we decline to take. Further, the defendant's reliance on *Commonwealth v. Bergstrom*, 402 Mass. 534 (1988), is misplaced as *Bergstrom* involved the introduction of testimony of a child witness by electronic means during the course of a criminal trial, circumstances distinguishable in fact and in law from the present case.

2. *The victims' psychological and medical records.* The defendant claims that the motion judge erred in refusing to disclose certain psychological and medical records to the defendant. The pertinent facts are as follows. Prior to trial the defendant moved to compel production of the victims' psychological records resulting from a Dr. Elaine Orabona's examination of the victims during August, 1989. The judge allowed the motion insofar as the judge examined Dr. Orabona's records in camera "to determine whether there are statements of the children which are discoverable."[2] The judge did not disclose Dr. Orabona's records to defense counsel or to the prosecutor.

Prior to trial the defendant also moved to compel production of the victims' medical records in the possession of the Hanscom Air Force Base Medical Clinic (clinic) "including, but not limited to," the results of laboratory tests and the physical examinations performed by a Dr. Hayes in August,

---

[2]Although the motion judge did not expressly so rule, the record reveals that Dr. Orabona's records are apparently privileged pursuant to G. L. c. 233, § 20B (1992 ed.).

1989.[3] At a hearing on the motion, defense counsel argued that the judge should at least review the records in camera "with regard to whether there is anything exculpatory in [the] records at all." The assistant district attorney agreed to an in camera review of the "physical" reports but argued that the other medical records were privileged and that there had been no preliminary showing of need for disclosure.[4] Alternatively, the assistant district attorney argued that the other medical records were irrelevant.

The judge allowed the motion to compel production of the results of the laboratory tests and the physical examinations from the dates of the alleged abuse to the physical examination conducted by Dr. Hayes in August, 1989. The motion judge, however, denied the motion with regard to "[e]ntries dealing with psychiatric and mental health assessments and treatment" contained in the clinic's records. The motion judge did not expressly rule on the privileged nature of the undisclosed records.

The defendant relies on *Commonwealth* v. *Stockhammer*, 409 Mass. 867 (1991), and argues that the judge's refusal to allow defense counsel to review the psychological records and the undisclosed clinic records, even though privileged, violates his right to a fair trial under art. 12 of the Massachusetts Declaration of Rights and warrants reversal of his convictions.

We start with the proposition that, when relevant evidence is excluded from the trial process for some purpose other than enhancing the truth-seeking function, the danger of convicting an innocent defendant increases. Relevant evidence refers to any evidence which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See Fed. R. Evid. 401. See

---

[3]The motion at issue is captioned, "Motion to Compel Production of Medical Records."

[4]The Commonwealth did not proffer a basis for its argument that the records were privileged.

also P.J. Liacos, Massachusetts Evidence 408-409 (5th ed. 1981). "[D]isclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Commonwealth* v. *Wilson*, 529 Pa. 268, 285 (Zappala, J., dissenting), cert. denied sub nom. *Aultman* v. *Pennsylvania*, 504 U.S. 977 (1992), quoting *Dennis* v. *United States*, 384 U.S. 855, 870 (1966). The Supreme Court of the United States has stated, "Our cases establish, at a minimum, that criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt." *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 56 (1987), and cases cited.

On the other hand, revelation of privileged information adversely affects the purposes underlying the need for the confidential relationship and serves as a disincentive to the maintenance of such relationships. "If it becomes known that confidences are violated, other people may be reluctant to use [confidential services] and may be unable to use them to maximum benefit. The purpose of enacting a . . . privilege is to prevent the chilling effect which routine disclosures may have in preventing those in need from seeking that help." *Commonwealth* v. *Collett*, 387 Mass. 424, 428 (1982). One need not venture far to see the force of this position; victims of rape or sexual abuse would likely shy away from forthright therapeutic sessions with their counsellors if their words were later lent to the perpetrator in aid of his or her defense.

In balancing these competing interests, we recognize that in *certain* circumstances a defendant must have access to privileged records so as not to undermine confidence in the outcome of trial. See *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 266 (1986). This is not to say, however, that a defendant charged with rape or sexual abuse must have access to a victim's privileged records in *all* circumstances. As the Appeals Court recently wrote, the prior pertinent decisions of the Supreme Judicial Court do not stand for the proposition that, "in any trial for rape or sexual assault, the defendant shall have access to all the medical and counseling records of the complainant from the time of birth." *Com-*

*monwealth* v. *Jones*, 34 Mass. App. Ct. 683, 685 (1993). See *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 61 (1987).

The issue then devolves to the need to articulate a standard that judges can apply to identify those circumstances in which disclosure of the victim's records privileged by statute is required to provide the defendant a fair trial. It may be said that the controverted privilege shall be pierced in those cases in which there is a reasonable risk that nondisclosure may result in an erroneous conviction. Our charge, then, is to describe a standard that defines the line between a less inclusive standard (disclosure is not ordered when it should be ordered) and an overly inclusive standard (disclosure is ordered when it should not be ordered), resolving any doubt in favor of disclosure.

The vexatious nature of the task at hand is best illustrated by the timing and sequence of events culminating in a judge's decision on a defendant's motion to compel production of privileged records. For it is at this point that the battle over disclosure of the privileged records has been joined. Yet, the issue remains uncrystallized, for in most cases the defendant, counsel, and the judge have not yet seen the privileged records and do not know what they contain. At this stage in the proceedings, a defendant's claim that nondisclosure of the privileged records violates his or her right to a fair trial is tenuous as the defendant has not established the existence of exculpatory or even relevant information in the privileged records. Indeed, full disclosure, predicated solely on a defendant's uninformed request, may yield nothing for the defense, and the privilege would have been pierced unnecessarily.

In the leading case of *Commonwealth* v. *Two Juveniles, supra*, which concerned records privileged pursuant to G. L. c. 233, § 20J (1992 ed.) (sexual assault counsellor privilege), we placed the burden of demonstrating the need to pierce the statutory privilege on the defendant, and said, in dictum, that "[b]efore any . . . inspection of the privileged material can be justified, the defendant must show a legitimate need for access to the communications." *Id.* at 269. On such a

showing, the judge then would review the subject records in camera, allowing defense and the prosecutor access to portions of the communications deemed material, necessary, or useful. See *Commonwealth* v. *Stockhammer, supra* at 882.

In the cases that followed *Two Juveniles*, the definition of the defendant's threshold burden exhibited a chameleon-like nature, evading uniform formulation. Compare *Commonwealth* v. *Two Juveniles, supra* at 269 (defendant must show "legitimate need"), and *Commonwealth* v. *Clancy*, 402 Mass. 664, 670 (1988) (defendant never articulated "any particular need"), with *Commonwealth* v. *Jones*, 404 Mass. 339, 343-344 (1989) (defendant demonstrated "realistic and substantial possibility" that file contained information helpful to his defense). See *Commonwealth* v. *Figueroa*, 413 Mass. 193 (1992), and *Commonwealth* v. *Stockhammer*, 409 Mass. 867 (1991). However, we now affirm the proposition that a defendant must show, at a minimum, a likelihood that the records contain relevant evidence to justify initial judicial review.[5]

---

[5]The *Two Juveniles* rule comports with the decisions of a vast majority of courts that have spoken on the issue and have required a threshold showing of some degree to justify piercing a privilege. See *State* v. *Howard*, 221 Conn. 447, 457 (1992) (defendant must show that "reasonable ground to believe" that failure to produce records would likely impair right to impeach witness); *Stripling* v. *State*, 261 Ga. 1, 6 (no in camera review absent reasonably specific request for relevant and competent information), cert. denied, 502 U.S. 985 (1991); *People* v. *Foggy*, 121 Ill. 2d 337, 349-350 (no in camera review absent any demonstrated need), cert. denied, 486 U.S. 1047 (1988); *Zaal* v. *State*, 326 Md. 54, 81-82 (1992) (defendant must show some relationship between the charges, the information sought, and the likelihood that relevant information exists in the records); *State* v. *Hummel*, 483 N.W.2d 68, 72 (Minn. 1992) (no in camera review absent plausible showing that information material and favorable); *State* v. *Gagne*, 136 N.H. 101 (1992) (to trigger in camera review defendant must show reasonable probability that the records contain information that is material and relevant); *State* v. *Cusick*, 219 N.J. Super. 452, 457 (1987) (court found records may be necessary for determination of issue prior to in camera review); *State* v. *S.H.*, 159 Wis. 2d 730, 738 (Ct. App. 1990) (in camera review if defendant shows records contain material evidence); *Gale* v. *State*, 792 P.2d 570, 581 (Wyo. 1990) (adopting *Ritchie* standard).

Two courts have held that a defendant cannot discover privileged records absent the consent of the holder of the privilege. See *People* v.

In *Commonwealth* v. *Stockhammer*, 409 Mass. 867 (1991), we considered whether in camera review of privileged records, under the *Two Juveniles* model, adequately protected the defendant's right to a fair trial under art. 12 of the Massachusetts Declaration of Rights. In rejecting the in camera prong of the *Two Juveniles* model, we held that "[t]he danger lurking in the practice of . . . in camera review [of privileged documents] by the trial judge is a confusion between the roles of trial judge and defense counsel. The judge is not necessarily in the best position to know what is *necessary* to the defense" (emphasis supplied). *Id.* at 882, quoting *Commonwealth* v. *Clancy*, 402 Mass. 664, 670 (1988). The admissibility of the disclosed records at trial is to be determined in the usual fashion.

We seek to avoid an overly inclusive, or overly broad result, one that would allow defense counsel controlled access to privileged records merely on a showing that the records are likely to be relevant to an issue in the case.[6] The records in such a circumstance may contain nothing that would aid the defense; if so, the privilege would have been pierced unnecessarily.

Accordingly, we hold that the defendant must show, at the threshold, that records privileged by statute are likely to con-

---

*District Court*, 719 P.2d 722, 727 & n.3 (Colo. 1986) (en banc); *Commonwealth* v. *Wilson*, 529 Pa. 268, 285, cert. denied sub nom. *Aultman* v. *Pennsylvania*, 504 U.S. 977 (1992). West Virginia apparently permits limited disclosure to counsel for the purpose of an in camera relevancy hearing without a threshold showing of any kind. See *State* v. *Allman*, 177 W. Va. 365 (1986).

[6]There is, of course, a danger in requiring the defendant to make too substantial a showing to justify piercing a privilege. A threshold requirement, so framed, could place the defendant in a "Catch-22" situation. "To gain access to the privileged records defendant must specifically allege what useful information may be contained in the target records. However, defendant has no way of making these specific allegations until he has seen the contents of the records." *People* v. *Foggy, supra* at 359 (Simon, J., dissenting). Such a requirement would produce a less-inclusive result in that possibly material, or even exculpatory, communications would remain undiscovered.

tain relevant evidence. If the judge finds, based on the defendant's proffer, that the records are likely to be relevant to an issue in the case, the judge shall review the records in camera to determine whether the communications, or any portion thereof, are indeed relevant.

During this relevancy determination stage, the defendant need not make a showing that the records *actually* contain information that carries, for example, the potential for establishing the unreliability of either the criminal charge or a witness on whose testimony the charge depends. The defendant must, however, advance, in good faith, at least some factual basis which indicates how the privileged records are likely to be relevant to an issue in the case and "that the quest for its contents is not merely a desperate grasping at a straw." *People* v. *Gissendanner*, 48 N.Y.2d 543, 550 (1979); *People* v. *Pena*, 127 Misc. 2d 1057, 1058-1060 (N.Y. Sup. Ct. 1985).[7] In considering the defendant's request the judge may consider, among other things, the nature of the privilege claimed, the date the target records were produced relative to the date or dates of the alleged incident, and the nature of the crimes charged.

The in camera process we have described today differs in its design and purpose from that which we rejected in *Stockhammer*. Under the pre-*Stockhammer* procedure, the judge was called upon to inspect and identify privileged material that was necessary or material to the defense. See *Commonwealth* v. *Stockhammer, supra* at 882. Here, we call upon the judge to review and identify only *relevant* materials, a task and term with which every judge is familiar.

Nonetheless, we are aware that the in camera review procedure denies the defendant the benefit of an advocate's eye in reviewing privileged records to determine whether any

---

[7] We do not encroach on the well-settled principle that "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Commonwealth* v. *Jones*, 404 Mass. 339, 343 (1989), quoting *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 57 (1987).

communications contained in the records are relevant. Yet, to allow full disclosure on a showing that the records are likely to be relevant to an issue in controversy would, however, cut against the purposes underlying the subject statutory privilege without so much as a confirmed need to do so. "Though the disclosure to the judge divulges the . . . privileged information, it is a practical necessity." *Commonwealth* v. *Collett*, 387 Mass. 424, 438 (1982).

The identification of relevant privileged materials, however, is only the first step in the process that we announce today. Once the trial judge determines that the privileged records do, indeed, contain relevant communications, the judge shall allow defense counsel and the prosecutor access to the relevant privileged materials for the limited purpose of determining, on motions by the parties, whether disclosure of the relevant communications to the trier of fact is required to ensure the defendant a fair trial. See *Pennsylvania* v. *Ritchie, supra* at 57 ("Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.") (Citation omitted.) From the filing of the defendant's initial motion to compel production, the procedure we contemplate is as follows.

*Stage 1 — privilege determination.* A criminal defendant in a case of rape or sexual abuse moves to compel production of the various records pertaining to the complainant. If the complainant or the keeper of the target records refuses to produce the records because of a statutory privilege against disclosure, the fact is brought before the judge. The judge shall then decide whether the records are privileged. The judge shall reduce his or her decision, and the reasons therefor, to writing, with specific reference to the privilege or privileges claimed and found, if any.

*Stage 2 — relevancy determination.* On notice of the judge's written finding that the target documents are privileged, defense counsel shall submit to the judge, in writing, the theory or theories under which the particular records

sought are likely to be relevant to an issue in the case. If the judge decides that the records are not likely to be relevant or that the defendant's request is supported only by a desire to embark on "an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable [the defendant] to impeach the witness," *People* v. *Gissendanner, supra* at 549, the judge shall deny the request.[8]

If, on the other hand, the judge decides that the defendant's proffer shows that the records are likely to be relevant to an issue in the case, the judge shall review the records in camera, out of the presence of all other persons, to determine whether the communications, or any portion thereof, are relevant. The judge should identify the irrelevant materials so that in the case of conviction and appeal they may be sealed and transmitted to the reviewing court.

*Stage 3 — access to relevant material.* The judge shall allow defense counsel and the prosecutor access to the relevant portions of the privileged records for the sole purpose of determining whether disclosure of the relevant communications to the trier of fact is required to provide the defendant a fair trial.

The judge shall ensure that breaches of confidentiality attending access to the relevant portions of the privileged records are limited only to those absolutely and unavoidably necessary. Any records so examined shall be subject to a protective order of the type presented in the Appendix to this opinion to ensure that the information will not be divulged beyond the extent required for the purpose stated above. The judge shall allow counsel access to the privileged records only in their capacity as officers of the court.

*Stage 4 — disclosure of relevant communications.* The burden is on the defendant to demonstrate that disclosure of the relevant portions of the records to the trier of fact is required to provide the defendant a fair trial. If the defendant

---

[8]The judge may postpone a decision on a pretrial request to discover privileged records, thereby allowing the issue to mature.

meets this burden, the judge shall permit the disclosure of those portions of the records which are shown to be needed for the purpose of preparing and mounting a defense.[9] The judge may condition disclosure on appropriate terms and conditions. In arriving at this determination the judge shall resolve any doubt he or she may have in the defendant's favor. The judge shall base his or her decision on written motions by the parties and an in camera hearing as the judge deems necessary. In any case, the judge shall set forth in writing the reasons for the decision in a memorandum of decision. The judge should identify any undisclosed materials so that in the case of conviction and appeal they may be sealed and transmitted to the reviewing court.

*Stage 5 — trial.* At trial, the judge shall determine the admissibility of the records that counsel may wish to introduce in a voir dire examination. In considering the admissibility of the records the judge shall be mindful of the requirements of the rape shield statute, G. L. c. 233, § 21B (1992 ed.). We pause to note that "the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial." *Pennsylvania v. Ritchie, supra* at 60.

In the present case, the dispute concerns certain psychological and medical records. We consider each in turn.

*Psychological records.* The defendant argues that the motion judge's decision to review Dr. Orabona's records in camera constitutes reversible error. The defendant is mistaken. At best, the defendant demonstrated to the judge that the subject records were likely to be relevant to an issue in the case. Thus, the defendant was entitled to in camera review by the judge, which is precisely what the judge conducted.

---

[9] We pause to note that admission of, or reference to, privileged material at trial could be conditioned on a determination (made after an in camera hearing) that the information counsel seeks to use is not available from any other source. See *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 882-883 (1991).

The basis of the judge's decision not to release the records to the parties after the in camera review, however, is not contained in the record. Accordingly, and in view of the procedure articulated above, we remand this aspect of the case to the Superior Court where the judge shall conduct a Stage 2 in camera examination and rule on the relevance of Dr. Orabona's records. If, after the in camera examination, the judge finds that the records are indeed relevant, the judge shall permit defense counsel and the prosecutor access, consistent with the Stage 3 disclosure protocol described earlier. After reviewing the records under this procedure the defendant may make a motion for a new trial in the usual manner.

*Medical records.* The defendant argues that the judge's refusal to allow defense counsel to review all of the clinic's medical records pertaining to the victims, including those provisions that concern any psychiatric or mental health assessments, warrants reversal of his convictions. We disagree. Neither the defendant nor the Commonwealth disputes the privileged nature of the records, although neither party cites authority supporting the assumption that the records are indeed privileged. Further, the motion judge did not rule on the privileged nature of the undisclosed records.

Accordingly, and in view of the procedure articulated above, we remand this aspect of the case to the Superior Court where the judge, on proper motions, shall rule on the privileged nature of the undisclosed clinic records. If the judge rules that the undisclosed clinic records are not privileged, then the judge shall release the records to the parties. After reviewing the records defense counsel may make a motion for a new trial in the usual manner.

If, on remand, the judge rules that the records are privileged from disclosure, then the defendant shall submit in writing the theory or theories under which the particular records are likely to be relevant to an issue in the case. If the judge finds that the records are likely to be relevant to an issue in the case, the judge shall review the subject records in camera to determine whether the records or a portion thereof are indeed relevant. If, after the in camera review, the judge

finds that the records are indeed relevant, the judge shall permit defense counsel and the prosecutor access, consistent with the Stage 3 disclosure protocol described above. After reviewing the records, the defense counsel may make a motion for a new trial in the usual manner.

3. *The victims' school records.* The defendant moved to compel production of all the victims' middle school and high school records because he believed the records contained information that affected the victims' credibility. In support of his request the defendant advanced his belief, unsupported by affidavit, that the victims may be learning disabled, and that the school records would cast light on this issue. The defendant apparently assumes that a learning disability adversely affects credibility. The defendant specifically requested the school attendance records because Brian had indicated that the alleged abuse had often occurred at his home around noontime on days he had stayed home from school. The Commonwealth argued that the school records were irrelevant. The judge allowed the motion in part, granting the defendant access to Brian's attendance records covering the periods of alleged abuse. The judge denied the defendant's request for school records outside the time frame in which the alleged abuse occurred. The judge wrote that the defendant failed to make a sufficient showing as to the need for the other records.

On appeal the defendant argues, under art. 12 of the Massachusetts Declaration of Rights, that the motion judge's denial of his request for production of all of the school records denied him a fair trial, and that, for this reason, his convictions must be reversed. We disagree.

"There is no privilege which would prevent the introduction of relevant school records in evidence at a trial." *Commonwealth* v. *Beauchemin*, 410 Mass. 181, 185 (1991). Contrary to the defendant's belief our holding in *Beauchemin* does not aid his argument, rather it seals its fate. The operative word is relevant. The defendant is entitled to discover relevant information. See Mass. R. Crim. P. 14 (a), 378 Mass. 874 (1979). The judge allowed the defendant access to

the relevant records covering the period of alleged abuse. The defendant does not assert, and the record does not reveal, any theory under which the undisclosed records are relevant. While the motion judge did not deny the defendant's request explicitly on these grounds, our review of the transcript leads us to conclude that the judge's decision was not in error. The defendant's reliance on *Commonwealth* v. *Gauthier*, 32 Mass. App. Ct. 130, 135 (1992), is misplaced as *Gauthier* involved school records privileged under G. L. c. 71B, § 3 (1992 ed.), a factual situation distinguishable from that in the present case.

4. *Unrelated accusation.* The trial judge refused to permit the defendant to cross-examine the victims concerning allegedly prior false allegations of sexual misconduct against another scoutmaster. One allegation concerned a game not entirely dissimilar to "strip" poker and the other concerned the use of a hand puppet to pat down the scouts in their sleeping bags to make certain that they were wearing underwear as the required sleeping nightwear. The defendant's reliance on *Commonwealth* v. *Bohannon*, 376 Mass. 90, 95 (1978), *S.C.*, 385 Mass. 733 (1982), is misplaced for several reasons, not the least of which is *Bohannon's* requirement that there be a factual basis for concluding that the victims or one of them had made the allegations and that the allegations were false. The record here indicates that neither victim made the allegations and that the allegations were true.

5. *Bill of particulars.* The defendant claims that he was not furnished sufficient details of the allegations in the indictments to prepare a defense. The defendant is entitled to "reasonable notice of the crime charged, including time, place, manner, or means." Mass. R. Crim. P. 13 (b) (1), 378 Mass. 871 (1979).

The victims were young teenagers who were sexually molested repeatedly over a number of months. They did not keep a journal of the exact time and date of each assault. However, the defendant was informed from the indictments that the assaults occurred from September, 1987, to October, 1988, in one case, and from the late summer to October,

1988, in the other case. The Commonwealth specified that some of the assaults were perpetrated at the victims' home on weekdays when they were not in school and that other assaults took place at the defendant's home, even while his wife and daughter were there. He was informed that most of the assaults occurred at his place of business on Saturday afternoons or Sundays. The defendant offered evidence in rebuttal. He does not argue that he would have presented his defense any differently had he known the exact dates and times of the alleged assaults. See *Commonwealth* v. *King,* 387 Mass. 464, 468 (1982). There is no merit to the defendant's complaint of lack of specificity. See *Commonwealth* v. *Montanino,* 409 Mass. 500, 512 (1991).

6. *Fresh complaint.* The defendant argues that the judge erred in admitting complaints of the defendant's conduct made by the victims to their mother because the complaints were stale. We have said that there is no wooden rule of law as to the time within which a victim of a sexual assault must make a complaint for such complaint to be admissible in evidence as a fresh complaint. *Commonwealth* v. *Amirault,* 404 Mass. 221, 228-229 (1989). Whether a complaint is made with sufficient promptness is left to the sound discretion of the trial judge. See *Commonwealth* v. *Sherry,* 386 Mass. 682, 691 (1984). We have not insisted on demanding promptness when the victim has been a child. See *Commonwealth* v. *Comtois,* 399 Mass. 668, 672-673 n.9 (1987).

Brian testified that the defendant began abusing him sexually in October, 1987, when he was fourteen years old and that the last incident occurred in January, 1989, when he was sixteen years old. He told his mother about them in March, 1989, two months after the last incident.

Stephen testified that the defendant began raping him in the summer of 1988 and that the last incident occurred in October, 1988, when he was fourteen years old. When his mother in July, 1989, asked him whether the defendant had raped him, he burst into tears.

These complaints were well within the boundaries of "freshness" in light of the victims' ages. See *Commonwealth*

v. *Amirault, supra* at 228-229 (eighteen-month delay); *Commonwealth* v. *Comtois, supra* (two-month delay); *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 491-492 (1991) (two-year delay). There was no error in permitting the victims' mother to testify as to the details of the victims' complaints. See *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992).

The judge instructed the jury as to the proper evidentiary status of fresh complaint when the evidence was admitted and again in his charge. The judge told the jury of the exclusively corroborative purpose of such evidence. Quite properly, the defendant did not object because there was no error. See *Commonwealth* v. *Scanlon, supra.*

7. *The prosecutor's closing argument.* Despite his failure to object, the defendant asserts reversible error in the final argument of the prosecutor. We have examined the argument with care. It was a strong but proper final argument. We need not consider whether there was a substantial risk of a miscarriage of justice because we perceive no prosecutorial errors.

8. *Ineffective assistance of counsel.* The defendant's argument of ineffective assistance of counsel concerns essentially three instances: (1) the admission of instructions on fresh complaint, (2) the prosecutor's final argument, and (3) sentencing. We have already concluded that there was no judicial error in the management of the fresh complaint evidence and instruction and in the prosecutor's final argument. Therefore, there is no merit in these two categories to a claim of ineffective assistance of counsel.

At sentencing, defense counsel pointed to the defendant's age, unblemished military record, and absence of a criminal record. The defendant himself addressed the court and spoke of his military career, and his accomplishments as a father and scoutmaster. A review of the record reveals no deficiency in the conduct of defense counsel which requires reversal.

Accordingly, the judgments are affirmed. The cases are remanded to the Superior Court for action consistent with this opinion.

*So ordered.*

APPENDIX.

MODEL ORDER

Upon consideration of the defendant's motion for discovery of the victim's treatment records and pursuant to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), it is hereby ORDERED [notwithstanding the provisions of G. L. c. 66A (1992 ED.),]* that such records be produced to counsel subject to the following terms and conditions:

1. Counsel shall have access to the records solely in their capacity as officers of the court. Counsel shall not disclose or disseminate any portion of the contents of the treatment records to anyone, including the defendant, without prior application to and an order of the court. [Counsel shall notify the Department of Social Services (DSS) and all third-party data subjects referred to in those records before making such application.]*

2. The treatment records sought by the defendant shall be made available to counsel in the Court House during regular business hours under arrangements to be made by the clerk. Counsel may read and make notes concerning the treatment records, but no portion of the treatment records shall be photocopied or reproduced without prior application to and an order of the Court. [Counsel shall notify DSS and all third-party data subjects referred to in those records before making such application.]*

3. Counsel shall not offer or adduce any portion of the victim's treatment records in evidence at trial or in connection with any other proceeding except on order of the Court. [Counsel shall notify DSS and all third-party data subjects referred to in those records before making such application.]*

4. At the conclusion of any trial or other disposition of this action, counsel shall deliver to the clerk, under seal, all originals and all copies of any treatment records produced to counsel for the defendant pursuant to any subsequent order of the court.

_____      _____
Dated                              Justice

*Language in brackets applies only to records of the Department of Social Services (DSS) or other State agencies, which must comply with the Fair Information Practices Act, G. L. c. 66A (1992 ed.).