Fremont-Smith, J.
It is uncontested that, on October 24, 1987, at approximately 4:41 a.m., Anne Marie Larson entered the emergency room of the Waltham-Weston Hospital and Medical Center (“Hospital”) complaining of a “burning and tightness” in her chest. She was seen by defendant Dr. Jeffrey Kraines, who examined her and subsequently discharged her from the emergency room. Within hours of her discharge, Anne Marie Larson suffered a fatal heart attack. Prior to October 24, 1987, her minor children, Kenneth and Allen Fiske, had been placed in foster care by the Department of Social Services (D.S.S.).
Plaintiffs then brought this medical malpractice and wrongful death action alleging, inter alia, that the actions of the defendants caused the plaintiffs (decedent’s children), Kenneth and Allen to suffer severe emotional distress and to suffer the loss of consortium of decedent, their mother, Ann Marie Larson.
Defendants now seek a court order requiring D.S.S. to produce its records concerning Kenneth and Allen, contending that they need to discover why Kenneth and Allen, prior to their mother’s death, had been placed in foster care. The reasons for such placement, they argue, may lead to information relevant to Allen’s and Kenneth’s alleged loss of consortium and to their alleged emotional distress arising out of their mother’s death.
Plaintiffs, for their part, seek to have the defendant’s subpoena quashed, contending that the DSS records are protected by G.L.c. 112, §135B (the social worker-client privilege); possibly protected by G.L.c. 233, §20B (the patient-psychotherapist privilege) (because the records may contain information pertaining to psychotherapy provided to Kenneth and Allen) and by G.L.c. 4, §7, cl. 26a.
I. The Social Worker Privilege (c. 112, §135B)
The social worker-client privilege is set forth in G.L.c. 112, §135B, which provides, in relevant part:
Except as hereinafter provided, in any court proceeding and in any proceedings a client shall have the privilege of refusing to disclose and or preventing a witness from disclosing, any communication wherever made, between said client and a social
*299 worker licensed pursuant to the provisions of section one hundred and thirty-two of chapter one hundred and twelve, or a social worker employed in a state, county or municipal governmental agency, relative to the diagnosis or treatment of the client’s mental or emotional condition . . .
The privilege granted hereunder shall not apply to any of the following communications . . .
(c) In any proceeding except one involving child custody, adoption or adoption consent, in which the client introduces his mental or emotional condition as an element of his claim or defense, and the judge or presiding officer finds that it is more important to the interest of justice that the communication be disclosed than that the relationship between the client and the social worker be protected . . .
The plaintiffs cite Allen v. Holyoke Hospital, 398 Mass. 372 (1986), for the proposition that the documents are privileged insofar as they contain patient-social worker communications, regardless of their relevance, under c. 112, §135B. Allen, however, construed an earlier version of c. 112 §135, which preceded the enactment of § 135(c), which now provides that such communications must be produced if a client introduces his mental or emotional condition as an element of his claim and the court finds that the importance of their disclosure, in the interest of justice, outweighs the importance of the client-social worker relationship in the particular circumstances.
In determining whether such documents are potentially relevant, however, the party seeking production must show that the plaintiff is seeking recovery for something other than “garden-variety” claims of emotional distress, but is claiming damages for psychic injury or psychiatric disorder. Here, plaintiffs are claiming “severe emotional distress” and “loss of consortium,” but it does not appear that they are alleging that their mother’s death resulted in psychic injury or psychiatric disorder. In such circumstances, it has been held that a plaintiff has not made “his mental or emotional condition an element of his claim” for purposes of the nearly identical language of c. 233, §20B(c), relating to the patient-psychotherapist privilege. See Sabree v. United Broth. of Carpenters & Joiners, 126 F.R.D. 422, 426 (D.Mass. 1989). Accordingly, I conclude that so much of the DSS records which pertain to any communications between the plaintiffs and a social worker relative to the diagnosis or treatment of the plaintiffs mental or emotional condition, are privileged and are not to be produced.
II. The Patient-Psychotherapist Privilege
The patient-psychotherapist privilege is set forth in G.L.c. 233, §20B which provides, in relevant part:
Except as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto ... a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient’s mental or emotional condition. The privilege granted hereunder shall not apply to any of the following communications . . . (c) In any proceeding, except one involving child-custody adoption, or adoption consent, in which the patient introduces his mental or emotional condition as an element of his claim or defense, and the judge . . . finds that it is more important to the interest of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.
Where, as here, documents which may contain communications in psychotherapy are sought in discovery, the Supreme Judicial Court has devised, in Commonwealth v. Bishop, 416 Mass. 169, 181-83 (1993), a five-step procedure to determine which records, if any, should be produced.[1]
Under the Bishop test, the court must first determine whether the records are privileged, and if so whether they are potentially relevant. If the court determines that they are, the trial court must then examine the records in camera to determine which records, if any, are actually relevant (Bishop, at 182) and identify any irrelevant materials.[2] Id. The documents which the trial judge determines to be actually relevant are then to be produced for inspection by defendant’s counsel at the Court House, subject to a protective order which conforms with the appendix to the Bishop decision.
I conclude, however, that c. 233 §20(c) is not applicable for the same reason that c. 112, §135B(c) is inapplicable, i.e., that plaintiffs have not made their mental or emotional condition an element of their claim, under the rationale of Sabree v. United Broth. of Carpenters and Joiners, supra.
III. The Fair Information Practices Act (c. 66A §2 (“FIPA”) and c. 4, §7, cl. 26(a)
G.L.c. 66A requires that state agencies maintain procedural safeguards to ensure that personal data is not revealed, pursuant to legal process, absent notice to the data subject and an opportunity for the said subject to object to disclosure. The statute also prohibits such an agency, pursuant to 2(c), from divulging any personal data without the approval of the data subject “unless such access is authorized by statute or regulations which are consistent with the purposes of this chapter...”
While the statute does not apply to “public records,” G.L.c. 4, §7 exempts from the definition of “public records,” data “relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.” In Allen v. Holyoke Hospital, p.3, supra, the Supreme Judicial Court interpreted the above language to require the trial judge to “decide whether disclosure of that information would be an unwarranted invasion of the *300 plaintiffs privacy," in the particular circumstances of each case. Id. at 382.
Accordingly, an in camera review of the documents by the court will be necessary to determine whether this criterion is met.
Accordingly, the following ORDER shall enter:
1. The Department of Social Services (“DSS”) shall produce to the court a complete copy of records relating to Kenneth Larson Fisher and Alien Larson Fisher, except that all portions of such records which contain or relate to any communications between either of them and any social worker or psychotherapist relating to the diagnosis or treatment of mental or emotional condition shall first be redacted by the DSS. Such redacted copy of records shall be delivered by DSS to the Superior Court Clerk’s Office, and shall remain there under seal pending the conclusion of the above entitled matter, subject to the following terms and conditions:
2. The records shall initially be reviewed by the Court in camera, out of the presence of all other persons, to permit the Court to make the necessary findings as to whether their production would constitute an unwarranted invasion of plaintiffs privacy in violation of c. 4 §7. All records found by the court to be not subject to production shall be so identified, set aside, and sealed, and in the event of an appeal, shall be transmitted by the Clerk to the reviewing Court.
3. Counsel for the defendants shall have access to those records, if any, which the Court finds should be produced (the “produced documents”) solely in his or her capacity as an officer of the Court.
4. The produced documents, if any, shall be made available to counsel for the defendants for review in the Court House during regular business hours under arrangements to be made with the Clerk. Counsel for the defendant may read and make notes concerning the records, but no portion of the produced documents shall be photocopied or reproduced without prior application to and an order of the Court.
5. Should counsel for the defendants seek to disclose, disseminate, or reproduce any portion of the produced documents counsel shall, by motion, request permission and an Order from the Court. Counsel shall serve a copy of the motion upon DSS, which in turn shall immediately notify all third parties referred to in those records who may be affected by disclosure. If any such third-party data subject wishes to object to disclosure, he or she shall file a written statement of objections with the clerk within seven days of the date of the motion which requests permission to disclose. Failure to file such a statement shall constitute a waiver of any such objections.
6. Counsel for the defendants shall not offer any portion of the produced documents, or the contents thereof, into evidence at trial or in connection with any other proceeding without prior application to and an order of the Court.
7. At the conclusion of any trial or other disposition of this action, counsel for the defendants shall deliver to the Clerk under seal, all originals and all copies of the produced documents in their possession.
8. Counsel for the plaintiffs shall have access to the produced documents subject to the same terms and conditions as counsel for the defendants, as set forth in this Order any subsequent order of the Court.

 Bishop was a criminal case, but this court perceives no reason why the procedure should differ in a civil case, as a defendant’s need for production of relevant records pertaining to a plaintiffs psychotherapy is, if anything, greater in a criminal case, where the defendant’s liberty may be at stake, than in a civil case.

 These are to be placed under seal in case they need to be reviewed pursuant to an appeal.