COMMONWEALTH *VS.* JAMES N. CLAYTON.

No. 99-P-311.

Barnstable. April 10, 2000. - August 2, 2001.

Present: PERRETTA, LAURENCE, & DUFFLY, JJ.

*Child Abuse. Rape-Shield Statute. Practice, Criminal,* Indictment, Instructions to jury. *Witness,* Cross-examination. *Evidence,* Cross-examination, Relevancy and materiality, Medical record, Prior inconsistent statement. *Grand Jury.*

At the trial of an indictment charging the defendant with having sexual intercourse or unnatural sexual intercourse with a child in which the complainant testified that she did not tell her mother about the defendant's abuse of her until six years after it had ceased because she was afraid that her mother would not believe her, the trial judge erred in precluding evidence of the identity of a prior abuser (her father) about whom the complainant had complained and against whom her mother had taken protective measures, where such evidence was relevant to the issue of her six-year delay in making complaint against the defendant; further, the exclusion of the relevant evidence was prejudicial and the defendant's conviction was reversed. [200-203]

In the circumstances of an appeal from a defendant's conviction on an indictment charging him with having sexual intercourse or unnatural sexual intercourse with a child in which the defendant contended that he was denied access by a Superior Court judge to the complainant's treatment records from her pediatrician, this court remanded the case so that, should the matter of production of these records arise at any retrial, a Superior Court judge could consider the issue and thereafter make appropriate written findings and conclusions in compliance with *Commonwealth* v. *Bishop,* 416 Mass. 169, 181-183 (1993). [203-204]

A criminal indictment that charged rape by unlawful acts of "sexual intercourse or unnatural sexual intercourse" comprehended acts of penile-vaginal penetration even though the grand jury had heard only evidence as to digital- and lingual-vaginal and oral-penile intercourse. [204-207]

Where a criminal defendant's conviction was reversed on the basis of the trial judge's exclusion of relevant evidence, this court did not consider whether the judge's charge on impeachment by prior inconsistent statements, which did not include any instruction concerning testimonial assertions omitted from prior statements, was sufficient and if not, whether any error was prejudicial or harmless but, rather, remanded to the trial judge to instruct the jury correctly on the law as applied to the evidence put before the jury at the retrial. [207]

INDICTMENT found and returned in the Superior Court Department on July 1, 1996.

The case was tried before *Gerald F. O'Neill, Jr.,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Linda A. Wagner,* Special Assistant District Attorney, for the Commonwealth.

PERRETTA, J. After considering all the evidence presented, a jury found the defendant guilty on an indictment charging him with having "sexual intercourse or unnatural sexual intercourse with a child," see G. L. c. 265, § 23, at "divers times" from 1979 until about 1987. On appeal, the defendant claims that his conviction must be reversed because of numerous errors made in the course of the proceedings against him.[1] We conclude that the trial judge erroneously restricted the defendant's cross-examination of the complaining witness concerning the reasons for her delayed complaint and reverse the conviction.

1. *The evidence.* Well into her twenties at the time of trial, Amy[2] testified to acts committed against her by the defendant while she was between eight and sixteen years of age, the time span comprehended by the indictment. She related that throughout that eight-year period, the defendant was married to her older sister.[3] She (Amy), her mother, and two brothers resided a short distance from the defendant and the sister, and Amy visited their home on a daily basis. Because her sister's employment required her to work until late evening, Amy was often alone with the defendant while she visited.

Amy told the jury that from 1979 through 1987, the defendant sexually abused her during her daily visits to his and her sister's home. As related by her, the defendant penetrated her vagina and anus with his fingers and tongue, and invaded her vagina, mouth, and anus with his penis. Both Amy and the defendant's son, who is three years older than Amy, described an incident in which the defendant told them to undress and engage in sexual activity. Although they removed their clothes, they refused to do

---

[1] A single justice of this court stayed execution of the defendant's sentence pending his appeal.

[2] A pseudonym.

[3] The marriage ended sometime in 1995.

more. Amy told no one about the defendant's abuse of her until 1993, when she confided in a friend and then reported the matter to the police.

Testifying in his own behalf, the defendant stated that when Amy was about twelve years old, he and she began to engage in hugging, kissing, and fondling. However, he denied ever having any type of intercourse with her.[4]

2. *Limitation of cross-examination.* Additional facts are necessary to an understanding of the defendant's claim that the trial judge erred in limiting his cross-examination of Amy. Through pretrial discovery, the defendant ascertained that in making the present complaint in 1993, Amy informed the police that when she was about six years of age, that is, about two years before the defendant began abusing her, she had been molested by her father, that she told her mother, and that her mother then took steps (divorce and protective orders) to keep the father away from her.

This information prompted defense counsel to bring a motion pursuant to G. L. c. 233, § 21B, the so-called "rape-shield statute," seeking to use Amy's statements to undermine any assertion by her that she delayed in complaining against the defendant because she feared no one would believe her or take her allegations seriously. After hearing, the trial judge denied the motion.

During her direct testimony at trial, Amy testified that she did not tell her mother about the defendant's abuse of her until six years after it had ceased because she was afraid that her mother would not believe her. Upon hearing Amy's testimony, the trial judge amended his earlier ruling, in part. He concluded that he would allow defense counsel to elicit from Amy the fact that when she previously had informed her mother of acts of sexual abuse against her, her mother had taken action. However, he would not allow defense counsel to bring out the identity of the abuser, that is, defense counsel could not bring out the fact that the mother took action against her husband to protect Amy from

---

[4]As related by the investigating officer who testified during the Commonwealth's case, the defendant's testimony was consistent with the statement that he gave to the police.

her father. Defense counsel took objection to the trial judge's ruling that the identity of the prior abuser could not be revealed.

It is on this basis that we are presented with the narrow question whether the trial judge erred in precluding evidence of the *identity* of Amy's abuser about whom she complained and against whom her mother took protective measures. Resolution of the issue depends upon whether identification of Amy's father as her abuser was relevant to any issue in the defendant's trial.

No citation is needed to support the established principle that relevancy determinations are a matter left to the sound discretion of the trial judge. That is not to say, however, that a trial judge has the discretion to exclude relevant evidence that is not unduly prejudicial. See *Commonwealth* v. *Martin*, 392 Mass. 161, 163 (1984), and cases therein cited. The concept of relevance is, as matter of law, broad. As stated in *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 572-573 (1997), *S.C.*, 427 Mass. 427 (1998):

> "Evidence is generally relevant so long as it has 'a "rational tendency to prove an ' issue in the case" ' or makes a 'desired inference more probable than it would be without' the evidence. . . . The desired evidence 'need not establish directly the proposition sought; it must only provide a link in the chain of proof.' . . . Indeed, evidence is to be considered relevant if it only 'throw[s] light,' . . . or 'shed[s] light on an issue,'. . . or, 'in connection with other evidence, it helps [the fact-finder] a little.'. . . It is relevant if it 'could have been helpful' for a jury in determining whether a complainant was telling the truth. . . . So long as evidence possesses any of these probative tendencies, even if it 'is of marginal significance, we cannot say that it [is] irrelevant.' "

In view of Amy's testimony that she delayed in complaining against the defendant, her brother-in-law, because she thought that no one would believe her, we conclude that evidence showing that the mother believed her and took action to protect her when she earlier complained against her *father* was relevant to the issue of her six-year delay in making complaint against the defendant.

Our conclusion on this question, that error has occurred,

requires us to consider next whether the erroneous limitation upon the defendant's cross-examination of Amy requires reversal of his conviction. See *Commonwealth* v. *Irving*, 51 Mass. App. Ct. 285, 291 (2001). The only argument advanced by the Commonwealth on this aspect of the appeal is that the defendant was not prejudiced in his defense because "[w]ith or without the identity of the other perpetrator being divulged, [he] was fully able to argue . . . to the jury" his theory of defense, that is, he was able to juxtapose Amy's "failure to complain about the defendant to her mother in contrast with her timely complaint about another molestation by another person." We do not agree.

There was but one question before the jury — whether they found Amy credible. Although Amy's testimony concerning the rapes was uncorroborated,[5] there was nothing to show that she had a motive to lie. Consequently, Amy's explanation for the six-year hiatus between the rapes and her complaint against the defendant was, in our view, a crucial issue.[6] The excluded evidence, that Amy's mother believed her when she stated that

---

[5]To be sure, the defendant's son and the defendant himself testified to serious acts of misconduct by the defendant in respect to Amy. But no matter how reprehensible those acts, they do not corroborate the fact of the rapes.

[6]Even the prosecutor believed the issue of Amy's delayed complaint important enough to make the following argument:

> "Now, the defense has offered several reasons why you should not believe what [Amy] is telling you. The first reason is that she couldn't have been raped by the defendant because [she] never told her mother. And the defense talks about a prior incident when Amy was younger. Her mother took off her shirt, saw a marking on her breast, asked her directly, [w]ho caused this? She said who it was. And then her mother took action. . . . And is it that unusual, would it be that unusual for a child during those years not to tell their mother something that might be bothering them — if it involved *a member of the family who was well liked in the family*. And if that child loved their mother as [Amy] has stated and never rebelled against that person and didn't want to hurt them in any way, would they feel free to disclose to that person that *some other person that mother cared for* was hurting them? I would suggest this is not unusual at all and does in no way mean that the defendant did not rape her" (emphasis added).

Had the defendant been allowed to elicit the identity of the person who had abused Amy previously, we think it unlikely that the prosecutor would have been able to explain away Amy's delayed complaint so easily.

her father had sexually abused her and that she took action to protect Amy from further abuse, directly contradicted Amy's testimony concerning her reasons for her late complaint against the defendant, i.e., she feared that her mother, who liked the defendant, would not believe her.

On the evidence presented, we think that the erroneous exclusion of evidence showing that Amy had been abused by her *father* rather than by some unnamed individual was prejudicial. As recently reiterated in *Commonwealth* v. *Esteves*, 429 Mass. 636, 639 (1999), quoting from *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998):

> "An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353, quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983)."

Because we cannot say with fair assurance that the error had little or no effect upon the jury, we conclude that the defendant's conviction must be reversed.

3. *Issues likely to recur at retrial.* We consider those issues raised by the defendant that are likely to arise at his retrial.

a. *Pediatricians' treatment records.* By a pretrial motion which has not been included in the record appendix but which was apparently brought pursuant to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), the defendant sought disclosure of Amy's treatment records from her pediatricians. A Superior Court judge other than the trial judge determined that, although the requested records were "privileged," the defendant had demonstrated a theory of defense which made the records relevant. After an in camera review, the judge found only one page of the records to be relevant and segregated the remainder for purposes of any appellate review. *Id.* at 182.

It is the defendant's argument on appeal that he was denied access to relevant documents and that we should review the

segregated documents and determine their relevancy. Although we decline to review the documents, we leave it open to the defendant to renew his motion on remand for the following reasons.

In the first instance, and as previously noted, we have not been provided with a copy of the defendant's motion and, therefore, do not know the basis of his request for the documents in issue. Further, and in light of the fact that we cannot readily discern any statutory recognition of a doctor-patient privilege, see *Alberts* v. *Devine*, 395 Mass. 59, 65-69, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985), and notwithstanding our appreciation for a person's privacy rights, see *Commonwealth* v. *Tripolone*, 425 Mass. 487, 488-489 (1997), the basis for the Superior Court judge's determination that the records were "privileged" is no more than an insufficient and unsupported conclusory statement. See *Commonwealth* v. *Bishop*, 416 Mass. at 181. But see also *Commonwealth* v. *Fuller*, 423 Mass. 216, 229 n.10 (1996), noting that *Commonwealth* v. *Bohannon*, 376 Mass. 90 (1980), *S.C.*, 385 Mass. 733 (1982), "did not involve a privileged record." Also of importance to this issue is our conclusion concerning the relevance of the fact that Amy's father had abused her.

Should this matter, production of Amy's pediatric records, arise at any retrial, the otherwise excluded records could contain relevant information. Rather than decide this question, we choose to leave it to a Superior Court judge to consider the issue and thereafter to make appropriate written findings and conclusions in compliance with *Commonwealth* v. *Bishop*, 416 Mass. at 181-183. See also *Commonwealth* v. *Fuller*, 423 Mass. at 227-229.

b. *The scope of the indictment.*[7] It is undisputed that the sole witness appearing before the grand jury, a police detective who had investigated the allegations, related that Amy had stated that the defendant had engaged in the following forms of

---

[7]The indictment reads, in relevant part: "That [the defendant] . . . did assault [Amy], a child under the age of sixteen years, with the intent to unlawfully have sexual intercourse or unnatural sexual intercourse with and abuse [Amy] and did unlawfully have sexual intercourse or unnatural sexual intercourse with and abuse [Amy], in violation of [G. L. c. 265, § 23]."

intercourse with her: digital-vaginal, lingual-vaginal, and oral-penile. When a grand juror asked the detective whether any penile-vaginal intercourse had occurred, the detective advised that Amy had not made any allegations concerning that type of intercourse.

Prior to trial, the defendant moved to dismiss the indictment, citing art. 12 of the Declaration of Rights of the Massachusetts Constitution, and *Commonwealth* v. *Barbosa*, 421 Mass. 547 (1996), and arguing that because the evidence before the grand jury supported two separate crimes of rape, digital and oral, and because it returned a one-count indictment, it would be impossible to determine the offense for which the defendant had been indicted. The motion was denied, and the defendant makes no argument on appeal concerning that ruling.

On August 4, 1998, the day before trial, Amy advised the prosecutor for the first time that the defendant had penetrated her vagina and anus with his penis. This information prompted the Commonwealth to seek to amend its answers to the defendant's bill of particulars. The case was then continued until November 30, 1998. On that date, the defendant moved to strike the Commonwealth's amended answers to his request for particulars on the basis that the amended answers encompassed substantive acts exceeding the scope of the indictment. The motion was denied, and the matter proceeded to trial. Amy testified about acts of digital, oral, and penile intercourse, and the trial judge's instructions essentially informed the jury that the indictment comprehended acts of natural and unnatural sexual intercourse. He also provided the jury with a specific unanimity instruction.

Based upon these facts and in reliance upon *Stirone* v. *United States*, 361 U.S. 212 (1960), and *Commonwealth* v. *Smith*, 431 Mass. 417 (2000), the defendant argues only that because he may have been convicted of a crime not charged by the grand jury, his conviction must be reversed. He does not argue that it was error either to deny his motion to dismiss or his motion to strike the Commonwealth's motion to amend its answers to the bill of particulars. Nor does he argue that he was somehow prejudiced by a lack of notice sufficient to defend against the allegation of vaginal rape by penile penetration. We put aside

these procedural peculiarities in order to address the basic question that comes before us, that is: does the indictment as framed, alleging rape by unlawful acts of "sexual intercourse or unnatural sexual intercourse," see note 7, *supra*, comprehend acts of penile-vaginal penetration when the grand jury only heard evidence as to digital- and lingual-vaginal and oral-penile intercourse?[8]

Neither *Stirone* nor *Smith* are relevant to the issue before us. In *Stirone* v. *United States*, 361 U.S. at 212, the jury were presented with evidence that concrete was being shipped for incorporation into a steel mill which would then manufacture products that would be shipped in interstate commerce, whereas the grand jury heard evidence limited to interference with interstate commerce in respect to the importation of sand and other materials used in making ready-mix concrete. In reversing the defendant's conviction, the Court stated, *id.* at 217, that the "grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built . . ." Put another way, whether Stirone had interfered with interstate commerce turned upon the particulars of his actions. *Id.* at 219. Next, we read *Commonwealth* v. *Smith*, 431 Mass. 417 (2000), as holding that, as used in G. L. c. 272, § 17 (incest statute), the term "sexual intercourse" must be construed in respect to incest as meaning penile-vaginal penetration only.

Putting aside *Stirone* and *Smith*, *supra*, as inapposite to the defendant's argument, we conclude that the question of whether the indictment, as framed, comprehends acts of penile-vaginal penetration must be answered against the defendant. As stated in *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 204 (1987):

"A statutory rape indictment encompasses unnatural as

---

[8]Because we think that our silence on this issue might lead the defendant to believe that the evidence as to this form of penetration, vaginal-penile, is beyond the scope of the indictment and should be excluded at any retrial that might occur, we consider the claim.

well as natural sexual intercourse, *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977), and will be supported by a finding of penetration of the female sex organ by the male sex organ, *ibid.*, or, among other things, of insertion of a finger into the genital opening of another person's body. *Commonwealth* v. *Mamay*, 5 Mass. App. Ct. 708, 710 (1977)."

c. *The jury instruction on prior inconsistent statements.* In his request for jury instructions, the defendant asked for an instruction on prior inconsistent statements that included language concerning omitted statements. The request expressed a correct statement of law on the circumstances presented. "An omission from the earlier statement [Amy's statement to the police] is inconsistent with a later statement of fact [Amy's testimony as to penile-vaginal penetration] when it would have been natural to include the fact in the initial statement." *Commonwealth* v. *Ortiz*, 39 Mass. App. Ct. 70, 72 (1995). See *Commonwealth* v. *Daye*, 393 Mass. 55, 73 n.16 (1984), and cases therein cited. The trial judge's charge on impeachment by prior inconsistent statements did not include any instruction concerning testimonial assertions omitted from prior statements.

Because we reverse the defendant's conviction on the basis of the trial judge's exclusion of relevant evidence, we do not consider whether the charge, read in its entirety, was sufficient on this point and if not, whether any error was prejudicial or harmless. Rather, we leave it to the trial judge on remand to instruct the jury correctly on the law as applied to the evidence put before the jury at the retrial. See *Commonwealth* v. *Ortiz*, 39 Mass. App. Ct. at 72.

*Judgment reversed.*