COMMONWEALTH *vs.* MICHAEL ALLEN.

No. 90-P-444.

Middlesex. June 20, 1990. - October 15, 1990.

Present: KASS, SMITH, & IRELAND, JJ.

*Witness*, Impeachment. *Evidence*, Impeachment of credibility, Prior mis-
conduct, Sexual conduct.

Discussion of the circumstances under which a criminal defendant is enti-
tled to introduce evidence of a complaining witness's prior arrests, fol-
lowing *Commonwealth* v. *Joyce*, 382 Mass. 222 (1981). [375-378]
In a criminal case, the judge properly declined to allow the defendant to
introduce evidence of the complaining witness's prior arrest, where the
defendant did not demonstrate that the arrest was relevant to any bias
or motive to lie on the witness's part. [378-379]

INDICTMENTS found and returned in the Superior Court
Department on March 22, 1988.

The cases were tried before *James D. McDaniel, Jr.*, J.

*Carol A. Donovan*, Committee for Public Counsel Ser-
vices, for the defendant.

*Wendy Murphy*, Assistant District Attorney, for the
Commonwealth.

SMITH, J. The defendant was convicted by a jury on indict-
ments charging him with armed robbery and assault by
means of a dangerous weapon.[1] The defendant raises one is-
sue on appeal; namely, that the judge improperly excluded a
line of questioning by which defense counsel intended to
show bias of the complaining witness.

At trial, the Commonwealth presented the following evi-
dence. On October 6, 1987, the victim, a twenty-five year old

---

[1] A conviction for assault, as a lesser included offense of an indictment
charging the defendant with assault with intent to rape, was placed on file
with the defendant's consent.

woman, left her home with her friend, Jeannine, to look for Jeannine's boyfriend, Nicholas. They visited several bars where they remained for short periods of time. At approximately 2:00 A.M., they found Nicholas. Jeannine and Nicholas drove off in Jeannine's automobile, and the victim started to walk home to her apartment in Lowell, a distance of about five miles.

Shortly after she began walking, a pickup truck pulled over, and the driver, the defendant, asked if she would like a ride. She knew the defendant slightly. She accepted his offer and got into the truck. The defendant then told her he had to get money for gas, so he turned the truck around and drove a distance of less than half a block to a bank. After parking in the vicinity of the bank, the defendant pulled out a knife, held it to the victim's throat, and said, "Give me all of your money." She took out a one dollar bill and threw it on the dashboard. The defendant then told her that she had better give him more money or she was in big trouble. When she told the defendant she had no more, he ordered her to take off her clothes. At this point, the victim jumped out of the truck, ran across the street, and hid behind a nearby house. The defendant then drove off in the direction of Lowell. After waiting a few minutes, the victim resumed her walk home.

Shortly thereafter, the victim was stopped by a police officer whom she knew. She appeared to the officer to be "shaken up." He inquired if she was all right, and the victim told him what had happened to her. The officer then left in his cruiser, looking for the defendant. Almost immediately, the officer saw a truck, driven by the defendant, coming from Lowell. He stopped the truck and the victim, arriving at the scene, identified the defendant as her assailant. At the time she identified the defendant, the victim, according to the officer, was "very frightened and very upset and shaken up." The officer also testified that, after he arrested the defendant, he searched the defendant's truck and found a one dollar bill on the dashboard and a knife under the driver's seat that matched the one described by the victim.

We summarize the evidence introduced by the defendant. The defendant testified that during the evening of October 6, 1987, he visited a bar until it closed at about 1:45 A.M. As he started to drive home, he saw the victim standing on a street corner. Believing her to be a prostitute, he asked her if she would like to come to his house. She agreed and got into the truck. Once they arrived at his house, he asked her to perform fellatio. She stated that her price was twenty dollars and he offered her ten dollars. She refused, and the defendant told her that he would have to go to a bank to obtain some more money. They then proceeded to a bank. The defendant left the truck, presumably to withdraw money from an automatic teller machine. He discovered, however, that he had left his wallet in the truck and returned to get it. He searched the truck for the wallet but could not find it. The defendant told the victim, "Give me back my damn wallet or I'll punch your lights out." After denying that she had the wallet, she produced it, threw it on the dashboard, and left the truck. The defendant testified that he had initially headed to his home in Lowell but discovered his cigarettes were missing, and turned the truck around to go to a 24-hour convenience store. He was then stopped by a police officer.

The issue on appeal arose in the following manner. The victim had previously been arrested and charged with being a common nightwalker on April 15, 1987, nearly six months before the date of the crimes for which the defendant was on trial. That charge was reduced to disorderly conduct and filed on September 28, 1987, nearly two weeks before the defendant became involved with the victim. Defense counsel requested at a side bar conference that she be allowed to question the victim about the common nightwalker arrest. The purpose of the questioning, according to defense counsel, was to show bias of the witness in that she "would have a definite motive for not telling the officer what actually happened" because she would be afraid of being arrested for being a com-

mon nightwalker. The judge denied the request, and the defendant claims that the judge abused his discretion.[2]

Generally, an arrest, without more, cannot be the basis for impeaching the credibility of a witness. *Commonwealth* v. *Haywood*, 377 Mass. 755, 759 (1979). See *Commonwealth* v. *Smith*, 26 Mass. App. Ct. 673, 675 (1988). However, " '[a] defendant has the *right* to bring to the jury's attention any "circumstance which may materially affect" the testimony of an adverse witness which might lead the jury to find that the witness is under an "influence to prevaricate' " (emphasis in original). *Commonwealth* v. *Joyce*, 382 Mass. 222, 229 (1981), quoting from *Commonwealth* v. *Haywood*, *supra* at 760, quoting from *Day* v. *Stickney*, 14 Allen 255, 258 (1867). In *Joyce*, the court held that, in the circumstances, the defendant was entitled to introduce evidence concerning the complaining witness's prior arrests. Here, the defendant argues that the decision in *Joyce* controls, and the trial judge's action in excluding evidence concerning the victim's common nightwalker arrest was error. The Commonwealth argues that the factual situation in *Joyce* was significantly different from that of the present case and, therefore, that decision is not applicable.

In view of the opposing arguments, a detailed examination of *Commonwealth* v. *Joyce, supra*, is in order. In *Joyce*, the defendant was tried and convicted on charges of rape and commission of an unnatural and lascivious act. The complainant testified that the defendant had picked her up at 3:00 A.M., while she was hitchhiking, drove her to a secluded spot and forced her to perform oral sex and to engage in sexual intercourse twice. She tried to escape and was beaten by the defendant, causing her mouth to bleed. Seeing the headlights of an approaching automobile, the complainant jumped out of the defendant's automobile and ran, naked

---

[2]The judge did allow the defendant to impeach the victim's credibility by introducing records of two criminal convictions. One of the convictions was on May 18, 1988, for being a common nightwalker, the other was a conviction on May 19, 1988, for unnatural acts. We express no view on the admissibility of such convictions. Compare G. L. c. 233, § 21, with G. L. c. 233, § 21B. See *Commonwealth* v. *Joyce*, 382 Mass. 222, 231 n.8. (1981).

and bleeding, toward the other vehicle. The vehicle was a police cruiser, and, on reaching it, the complainant told the police that the defendant had raped her.

The defendant's account in *Joyce* differed markedly from the complainant's testimony. He testified that the sexual acts were consensual and denied beating her. Her mouth was bloody when he picked her up as a result, she had told him, of a fight she had with her boyfriend. Further, when the defendant saw that the approaching vehicle was a police cruiser, he warned the complainant to get dressed, but instead she ran from his automobile toward the cruiser.

In order to bolster his case, the defendant in *Joyce* attempted to introduce evidence that the complainant had twice been charged with prostitution shortly before she met him. On one charge, the defendant offered evidence to the trial judge that the complainant had approached an undercover police officer and solicited him to perform oral sex for money. On the second charge, the defendant alleged that the complainant was found undressed and engaged in sexual acts in an automobile. Her male companion told the police officer he had picked her up and she agreed to engage in sexual acts for twenty dollars. The defendant intended to introduce this evidence either through cross-examination of the complainant or through the testimony of the police officers involved in the complaints. Defense counsel told the trial judge in *Joyce* that such evidence "was to show that, having been found in a similar situation on two prior occasions, the complainant was herself arrested and charged with a crime. Thus, the allegation of rape against the defendant may have been motivated by her desire to avoid further prosecution." *Commonwealth v. Joyce*, 382 Mass. at 224. The trial judge ruled that the defendant could not offer such testimony nor inquire about those charges in cross-examination of the complainant.[3] On

---

[3]The judge based his ruling on the prohibition in G. L. c. 233, § 21B (the "rape shield" statute), against admitting in a rape trial evidence of reputation or of specific instances of a rape victim's sexual conduct. In this case, the judge did not cite G. L. c. 233, § 21B, as the basis for his ruling, and it has not been discussed by either party on appeal.

appeal, the Supreme Judicial Court reversed. It noted that "[t]he defendant intended to show [by the evidence of the two prior arrests] that the complainant, *having been found in a similar situation on two prior occasions*, had been arrested on each occasion and charged with prostitution" (emphasis supplied). *Id.* at 230. The court ruled that it could not say that "this evidence has no rational tendency to prove that the complainant was motivated falsely to accuse the defendant of rape by a desire to avoid further prosecution." *Ibid.*

Because a prior arrest of a victim is not admissible in all circumstances, a defendant is required to furnish some persuasive explanation why the arrest might indicate bias or a motive to lie. *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 267 (1986). Compare *Commonwealth* v. *Lefkowitz*, 20 Mass. App. Ct. 513, 516 n.6 (1985). The explanation is necessary in order for the trial judge to "make an appraisal of the materiality of the testimony sought in light of [the defendant's] right 'to show specific bias or motive to prevaricate on the part of the government witness.'" *Commonwealth* v. *Haywood*, 377 Mass. at 761, quoting from *Commonwealth* v. *Santos*, 376 Mass. 920, 924 (1978).

Here, the defendant failed to present any persuasive evidence regarding the admissibility of the victim's prior arrest on the issue of bias or motive to lie. No evidence was presented to the judge about the circumstances of the victim's prior arrest, in contrast to the defendant's offer of proof in *Commonwealth* v. *Joyce*, *supra*.[4] In addition, unlike the complainant in the *Joyce* case, the victim in this matter was not discovered in an arguably compromising situation with the defendant. The undisputed evidence showed that she was first observed by a police officer walking alone on a road. The defendant was nowhere in sight. The " 'act' of walking on the streets or at least being abroad at night . . . certainly is not

---

[4]The defendant argues in his brief that, because the victim was arrested for common nightwalking, "it may be inferred that she was arrested at nighttime while walking in the streets." Such an inference appears speculative in light of the fact that the charge was reduced to disorderly conduct.

criminal in itself."[5] *Thomes* v. *Commonwealth*, 355 Mass. 203, 207 (1969). Because the victim was observed by the police as doing nothing improper, let alone criminal, we fail to see how she would be motivated to fabricate charges against the defendant, in order to avoid being charged, herself, with common nightwalking.

We are aware that "[a] defendant is entitled to present his own theory of the encounter to the jury." *Commonwealth* v. *Joyce*, 382 Mass. at 230. In the circumstances, however, we hold that there was no abuse of discretion in excluding the evidence of the victim's prior arrest.

*Judgments affirmed.*

---

[5]In *Commonwealth* v. *King*, 374 Mass. 5, 13 (1977), the court construed the common nightwalking provision in G. L. c. 272, § 53, as punishing persons abroad at night who solicit others to engage in illicit sexual acts.